UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JHON JADER BORNACHERA FLOREZ, | No. 1:25-cv-1897 CSK |
| Petitioner, | |
| v. | ORDER |
| TIMOTHY S. ROBBINS, et al., | |
| Respondents. | |

Petitioner, an asylum seeker from Colombia who entered the United States on or around December 7, 2024, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials. Department of Homeland Security ("DHS") officials paroled petitioner and released him on December 26, 2024 pursuant to Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226. On October 27, 2025, petitioner received notification from U.S. Immigration and Customs Enforcement ("ICE") instructing him to appear at the ICE Field Office in San Francisco for an in-person check-in visit. On October 30, 2025, when petitioner presented himself at the ICE Field Office as required, petitioner was re-detained without notice or a pre-deprivation hearing. This habeas action concerns petitioner's re-detention. Pending before the Court is petitioner's motion for a

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 8.)

1

preliminary injunction seeking petitioner's immediate release.

## I.     PROCEDURAL BACKGROUND & CONVERSION TO A MOTION FOR PRELIMINARY INJUNCTION

On December 17, 2025, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging petitioner's re-detention and seeking, as relevant here, an order granting the petition for writ of habeas corpus and ordering petitioner's immediate release, and permanently enjoining the government from re-detaining petitioner absent written notice and a hearing prior to re-detention where respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. (ECF No. 1 at 12.)  Petitioner simultaneously filed a motion for temporary restraining order with supporting declarations and exhibits, noting that a hearing was not requested. (ECF Nos. 2, 2-2.)  Petitioner seeks an order granting the motion and ordering petitioner's immediate release. (ECF No. 2 at 14.)

On December 17, 2025, the district court issued a briefing schedule on the motion for temporary restraining order. (ECF No. 4).  The district court also ordered the parties to inform the Court whether they were amenable to converting the motion for temporary restraining order into a motion for preliminary injunction, whether they requested a hearing on the motion, and whether petitioner was a member of the certified class in Maldonado Bautista, et al. v. Santacruz, et al., Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 25, 2025).  (Id.)

The parties consented to the jurisdiction of a U.S. Magistrate Judge, and on December 19, 2025, this case was reassigned to the undersigned.  That same day, this Court ordered that the district judge's briefing schedule remain in place.  (ECF No. 9.)  This Court also ordered respondents to file all portions of petitioner's relevant A-File and other supporting documents referenced in or related to respondent's opposition, including copies of all orders of release and all detention orders.  (Id.)

On December 22, 2025, respondents filed an opposition, including all their arguments in opposition to both a motion for temporary restraining order and a motion for preliminary injunction and confirming they do not oppose conversion to a motion for preliminary injunction.

2

(ECF No. 10 at 2). On December 22, 2025, petitioner filed a reply. (ECF No. 11.) Respondents filed a supplement to their opposition on December 22, 2025 in response to the Court's orders, submitting documents relevant to their opposition and to petitioner's custody and release. (ECF Nos. 9, 12, 13.)

Petitioner and respondents do not request a hearing and are amenable to converting the motion for temporary restraining order to a motion for preliminary injunction without further briefing. (See ECF No. 10 at 2; ECF No. 11 at 1.) All parties agree that petitioner is not a member of the certified class in Maldonado Bautista. (ECF Nos. 10 at 2; ECF No. 11 at 4 n.2.) Neither side requested a hearing on the pending motion. (ECF Nos. 10, 11.)

Because the standard for issuing a temporary restraining order and preliminary injunction is the same, see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001), respondents had notice and opportunity to respond in opposition, and all parties appear amenable to converting the motion, petitioner's motion for a temporary restraining order is converted to a motion for preliminary injunction without further briefing. (See ECF Nos. 10, 11.)

Petitioner's motion for preliminary injunction is submitted for decision on the record and written briefing.

## II. FACTUAL BACKGROUND[2]

Petitioner is a native of Colombia who fled Colombia due to threats and persecution against him based on his sexual orientation. (ECF Nos. 2 & 2-2 at 2.) Petitioner arrived in the United States on or around December 7, 2024.[3] (Id.) On or around December 20, 2024, petitioner underwent a Credible Fear Interview. (Id.) Following a determination by an asylum officer that petitioner had established a credible fear of persecution on December 23, 2024, DHS paroled and released petitioner from its custody into the United States on December 26, 2024.

---

[2] In their opposition, respondents state that they "do not contest the relevant facts asserted by petitioner." (ECF No. 10 at 1.)
[3] The petition and other documents identify December 6, 2024 as the arrival date (see ECF No. 1, ¶ 1 (petition); ECF No. 2-2 at 17 (asylum application); ECF No. 13-1 at 13 (Record of Deportable/Inadmissible Alien)), while other documents are dated December 7, 2024 (see ECF No. 13-1 at 5-10 (Notice and Order of Expedited Removal). This does not affect the Court's analysis of the pending motion.

1  (Id.; see ECF No. 13-1 at 1 (12/26/2024 DHS Form I-286 Notice of Custody Determination), 11-
2  12 (12/26/2024 Interim Notice Authorizing Parole)).  As a condition of petitioner's release,
3  petitioner was required to enroll in the Intensive Supervision Appearance Program ("ISAP"), a
4  program operated by a private contractor that ICE uses to monitor released noncitizens.  (ECF
5  No. 2-2 at 2.)  On December 26, 2024, DHS officials issued petitioner an Interim Notice
6  Authorizing Parole under 8 U.S.C. § 1182(d)(5).  (ECF No. 2-2 at 2; ECF No. 13-1 at 11-12.)
7  DHS also issued petitioner a Notice of Custody Determination (DHS Form I-286) stating that
8  petitioner was being released pursuant to Section 236 of Naturalization and Nationality Act,
9  which is 8 U.S.C. § 1226.  (No. 2-2 at 2; ECF No. 13-1 at 1.)  In addition, DHS provided
10 petitioner with a Notice to Appear in Immigration Court (DHS Form I-862).  (ECF No. 2-2 at 2;
11 ECF No. 13-1 at 2.)  The Notice to Appear stated that petitioner would be appearing for a Master
12 Calendar Hearing with the San Francisco Immigration Court on February 26, 2025.  (ECF No. 2-
13 2 at 2; ECF No. 13-1 at 2.)  The same document stated that the Notice to Appear was being issued
14 after an asylum officer had found that petitioner had demonstrated a credible fear of persecution
15 or torture.  (ECF No. 2-2 at 2; ECF No. 13-1 at 2.)  In addition, the Notice to Appear also stated
16 that the Section 235(b)(1) order was vacated pursuant to 8 C.F.R. § 208.30.  (ECF No. 2-2 at 2;
17 ECF No. 13-1 at 2.)  INA Section 235(b)(1) is 8 U.S.C. § 1225(b)(1).

18         At the time of petitioner's release, petitioner informed ICE officers that he would be
19 relocating to Oakland, California.  (ECF No. 2-2 at 3.)  Based on that information, immigration
20 officials instructed petitioner to present himself to the ICE Field Office in San Francisco in early
21 January 2025.  (Id.)  They also placed an ankle monitor on petitioner.  (Id.)

22         On or around January 6, 2025, pursuant to the instructions provided to petitioner by ICE,
23 petitioner appeared at the ICE San Francisco Field Office for his check-in visit, where ICE
24 officials conducted an interview.  (Id.)  At the interview, petitioner was instructed to return for
25 another in-person check-in visit on December 18, 2025.  (Id.)  In addition, the ICE officers
26 removed petitioner's ankle monitor and provided petitioner with a monitoring application.  (Id.)
27 The ICE officers instructed petitioner to send selfie-pictures to ICE once a month, whenever ICE
28 sent an alert to petitioner on his cell phone monitoring application.  (Id.)

Although petitioner expected to appear at his scheduled Master Calendar hearing on February 26, 2025, petitioner was notified on that same day that his Master Calendar hearing had been rescheduled for August 5, 2025. (Id.) Later, at a date prior to August 5, 2025, petitioner was informed that his Master Calendar Hearing was rescheduled to May 26, 2026. (Id.) Petitioner knew that he had one year from the date of his entry into the United States to file an asylum application, so he retained the services of a legal provider, who proceeded with preparing an asylum application for petitioner. (Id.) On or around June or July 2025, petitioner filed the asylum application with the San Francisco Immigration Court. (Id.)

Between petitioner's release from detention on December 26, 2024 until his re-detention on October 30, 2025, petitioner attended Saint Mary's Catholic Church on most Sundays. (Id.) Because petitioner did not have a work permit, petitioner cleaned and cooked at his residence. (Id.) Petitioner began taking English classes at an adult school. (Id.) Petitioner complied with the monitoring requirements.[4] (Id. at 3-4.) Petitioner also informed ICE of his new address. (Id. at 4.)

Petitioner needed money to pay for household expenses and to hire an immigration attorney to represent him in immigration court. (Id.) In early October 2025, petitioner started his own business where he sold clothes through social media. (Id.)

On October 7, 2025, petitioner received a notification from ICE through his phone application instructing him to appear at the ICE Field Office in San Francisco for an in-person check-in visit. (Id.) When petitioner appeared for the in-person check-in visit at the ICE Field Office on October 30, 2025, petitioner was detained. (Id.) When petitioner asked for the specific facts and reason for his arrest, the ICE officer stated that petitioner had violated a number of immigration laws. (Id.) When petitioner asked again for more specific facts and evidence in support of the ICE officer's claim, the ICE official did not respond. (Id.) The ICE official told petitioner that they had orders to arrest everyone who came to see them at their office. (Id.)

---

[4] Petitioner notes in his motion that he was late one time in submitting his selfie-picture through the ISAP application on July 15, 2025. (ECF No. 2 at 5.) This issue is not relevant as respondents do not contend that petitioner violated any conditions of his release. (See ECF No. 13 at 2 n.1.)

## III. LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To qualify for injunctive relief, plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that she will suffer irreparable harm without an injunction; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest. Id. at 20. A deficiency in any element precludes relief. Id. at 23. "[I]f a plaintiff can only show that there are serious questions going to the merits -- a lesser showing than likelihood of success on the merits -- then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

The Court finds petitioner has established a likelihood of success on the merits of his due process challenge to his detention.

#### 1. Applicability of 8 U.S.C. § 1225(b)(1)

Respondents argue that petitioner is subject to § 1225(b)(1) expedited removal and therefore, subject to mandatory detention. The problem with respondents' argument is that even when accepting as accurate the government's description and analysis of § 1225(b)(1) expedited removal (see ECF No. 10 at 4:6-6:8), petitioner was not subject to § 1225(b)(1) because it is undisputed that petitioner was paroled into the United States. See 12/26/2024 Interim Notice Authorizing Parole (ECF No. 13-1 at 11-12); see also Resp't Opp'n (not disputing petitioner's immigration parole status). This is because § 1225(b)(1) does not apply to individuals paroled into the United States as the government itself acknowledges:

> Section 1225(b)(1) allows for the expedited removal of any noncitizen "described in" § 1225(b)(1)(A)(iii)(II), as designated by the Attorney General or Secretary of Homeland Security—that is, any noncitizen not "admitted or paroled into the United States" and "physically present" fewer than two years—who is inadmissible under § 1182(a)(7) at the time of "inspection."

(ECF No. 10 at 4; see also ECF No. 10 at 5 (quoting Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139-40 (Jan. 24, 2025)); 8 U.S.C. § 1225(b)(1)(A)(iii) (excluding aliens who have been admitted or paroled into the United States)).  Petitioner was paroled into the United States by immigration officials on December 26, 2024, and remained on immigration parole when he was re-detained on October 30, 2025.  (See ECF No. 13-1 at 11-12.)  While petitioner may have been properly subject to § 1225(b)(1) expedited removal upon his arrival in the United States on December 7, 2024, see 8 U.S.C. § 1225(b)(1)(A)(i), respondents provide no legal authority for application of § 1225(b)(1) expedited removal to petitioner after he was paroled into the United States, including when he was re-detained on October 30, 2025.  Therefore, the government's argument that § 1225(b)(1) expedited removal applies to petitioner fails.

In addition, when petitioner was paroled into the United States, he was expressly released pursuant to 8 U.S.C. § 1226 (Section 236 of the INA) and 8 C.F.R. part 236.  12/26/2024 DHS Form I-286 Notice of Custody Determination (ECF No. 13-1 at 1); 12/26/2024 Interim Notice Authorizing Parole (ECF No. 13-1 at 11-12).[5]

    *2. Due Process*

Petitioner argues that due process was denied because he was not provided with "the written notice required under 8 C.F.R. § 212.5(e)(2) that must accompany a revocation of parole" or a pre-deprivation bond hearing before petitioner was re-detained.  (ECF No. 2 at 2; see id. at 8; ECF No. 1 at ¶¶ 32-41; ECF No. 11 at 4.)

The Due Process Clause protects persons in the United States from being deprived of life,

---

[5]  In his reply, petitioner argues that § 1225(b)(2) does not apply because he was paroled into the country, and that respondents rely on the recent change in the government's interpretation of § 1226(a).  (ECF No. 11 at 1-2, 3.)  It is unclear why petitioner presents argument in his reply regarding § 1225(b)(2) and the government's recent changed interpretation of § 1226(a) where the government does not assert that petitioner is being detained pursuant to § 1225(b)(2) or present any argument regarding its new interpretation of § 1226(a).  Compare Pet'r Reply (ECF No. 11), with Resp't Opp'n (ECF No. 10).  Regardless of this argument in petitioner's reply, the underlying habeas petition and petitioner's motion refer to § 1225(b)(1) and make clear that petitioner claims that due process was denied because he was not provided with the required written notice to revoke immigration parole and petitioner was not provided with a pre-deprivation bond hearing before he was re-detained.  (ECF No. 2 at 2; see id. at 8; ECF No. 1 at ¶¶ 32-41.)  The Court turns to the due process claim.

liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

"The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly

8

subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481-84.

Here, petitioner was initially detained upon his arrival, then paroled into the United States on December 26, 2024 and released. As this district court recently explained, this Court agrees that noncitizens paroled into the United States have a liberty interest in their continued release:

> Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). See e.g. Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (determining that the petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the petitioner released from custody subject to the conditions of her preexisting parole under § 1182(d)(5)(A), and requiring notice and a hearing prior to her re-detention); Noori, 2025 WL 2800149, at *9–10, 14 (enjoining re-detention of the petitioner during the pendency of his removal proceedings without leave of the court, when the petitioner was previously released on humanitarian parole pursuant to § 1182(d)(5)(A)); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3, 2025) (ordering the petitioner's immediate release following re-detention when he was initially released pursuant to § 1182(d)(5)(A)). The court agrees with the conclusions reached in the cited cases and finds that petitioner is likely to demonstrate that he has a liberty interest in his continued release. The court proceeds to consider whether due process requires written notice and a pre-detention hearing before a neutral adjudicator.

Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); see also Castellon v. Kaiser, 2025 WL 2373425, at *5 (E.D. Cal. Aug. 14, 2025) (case-by-case analysis required as to the decision to revoke parole); Y-Z-H-L v Bostock, 2025 WL 1898025, at *10-12 (D. Or. July 9, 2025). This Court concludes that petitioner has a protected liberty interest in his release. See Chavarria, 2025 WL 3533606, at *3; Castellon, 2025 WL 2373425, at *5; Guillermo M. R. v.

9

1  Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest
2  that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Y-
3  Z-H-L, 2025 WL 1898025, at *10-12; Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June
4  26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty
5  interest); F.M.V. v. Wofford, 2025 WL 3083934, at *4-5 (E.D. Cal. Nov. 4, 2025).

6  Next, the Court turns to what procedures are necessary to ensure that the deprivation of
7  that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has
8  "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to
9  removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also
10 Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). In
11 applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C.
12 § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must
13 account for the heightened governmental interest in the immigration detention context."
14 Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the court considers
15 three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the
16 government's interest. Mathews, 424 U.S. at 335.

17 First, petitioner has a private interest in remaining free from detention. "Freedom from
18 imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at
19 the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing
20 Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty
21 protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's
22 discretion to incarcerate non-citizens is always constrained by the requirements of due process.").
23 For over ten months, petitioner was free from custody before his re-detention. Between
24 petitioner's release from detention on December 26, 2024 until his re-detention on October 30,
25 2025, petitioner attended church on most Sundays, lived with his sister, cleaned and cooked at
26 their residence, and began taking English classes at an adult school. (ECF No. 2-2 at 3-4.)
27 Petitioner complied with ICE's monitoring requirements and respondents do not contend that
28

10

petitioner violated any release conditions. (See id. at 3-4; ECF No. 13 at 2 n.1.).[6]  Petitioner also informed ICE of his new address. (ECF No. 2-2 at 4.)  Petitioner has no criminal record, which respondents do not dispute. (ECF No. 1 at ¶ 12; see Resp't Opp'n.)

Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to petitioner, and finds this factor weighs in petitioner's favor.  "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason."  Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.").  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  "Where, as here, '[the petitioner] has not received any bond or custody ... hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [petitioner] has had an opportunity to determine whether there is any valid basis for her detention."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).

Finally, with regard to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without notice and without a hearing is "low."  See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094. Even if respondents believed they had a proper reason to detain petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention.

---

[6] Petitioner notes in his motion that he was late one time in submitting his selfie-picture through the ISAP application on July 15, 2025. (ECF No. 2 at 5.)  This issue is not relevant as respondents do not contend that petitioner violated any conditions of his release. (See ECF No. 13 at 2 n.1.)

1   "That the Government may believe it has a valid reason to detain petitioner does not eliminate its
2   obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v.
3   Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). In addition, here, the government's
4   interest is even lower because petitioner was previously released after immigration officials
5   determined he was not a flight risk or danger to the community, he lived in the country for over
6   ten months on release, he has no criminal record, and he has complied with all conditions of
7   release, including reporting to ICE as required. See Pinchi, 2025 WL 1853763, at *2.
8         Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor
9   of finding petitioner is entitled to notice and a bond hearing, and petitioner should have been
10  provided such notice and a hearing before he was re-detained. "An essential principle of due
11  process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for
12  hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S.
13  532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal
14  cases, parolees released on parole, which does not provide "absolute liberty," but rather
15  "conditional liberty properly dependent on observance of special parole restrictions," are also
16  entitled to due process, including a predeprivation hearing before their parole can be revoked.
17  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend
18  to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases).
19  Respondents identify no reason why written notice was not provided as required by their own
20  regulations or why and a pre-deprivation hearing could not be held, and provided no evidence of
21  "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo
22  M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner has
23  established a likelihood of success on the merits of his due process claims.
24        B.  Irreparable Harm
25        The second preliminary injunction factor requires petitioner to demonstrate that she "is
26  likely to suffer irreparable harm in the absence of preliminary relief." Winter, 555 U.S. at 20. "It
27  is well established that the deprivation of constitutional rights 'unquestionably constitutes
28  irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012); Baird v. Bonta, 81

F.4th 1036, 1040 (9th Cir. 2023) (Where a plaintiff alleges a constitutional violation and "shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."). Here, petitioner is irreparably harmed by the deprivation of his physical freedom. Further, petitioner's re-detention imposes other burdens because petitioner is unable to continue his education and is separated from his sister and friends. (See ECF No. 2 at 13.) Respondents do not dispute petitioner's claims that she will be irreparably injured by this re-detention. "As other courts that have faced this issue have explained, the violation of petitioner's statutory rights causes 'immediate and irreparable injury.'" Lepe, 2025 WL 2716910, at *9 (citations omitted).

### C. Balance of Hardships and Public Interest

Finally, the Court turns to the last two Winter factors, which merge when the government is the nonmoving party. Nken v. Holder, 556 U.S. 418, 435 (2009); Baird, 81 F.4th at 1040 (internal citations omitted). Petitioner argues that the balance of hardships weighs in favor of injunctive relief because he "faces weighty hardships: loss of liberty and separation from family and friends." (ECF No. 2 at 13-14.) Though the government has an interest in enforcing immigration laws, the issue here is whether the government can re-detain the petitioner without providing notice as its own regulations require and a bond hearing over 10 months after the government paroled and released petitioner. This Court agrees with petitioner. Petitioner faces a loss of liberty and separation from his sister and friends.

On the other hand, respondents face no hardship because respondents must release a person the government previously released with no criminal record, who has complied with all the conditions of his release, and who has since lawfully resided in the United States for over ten months. Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983); see also Rodriguez v. Robbins, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Further, the public has a strong interest in requiring respondents to follow the law and comply with due process. In addition, as recognized by the Ninth Circuit, "costs to the public of

immigration detention are staggering[.]" Hernandez, 872 F.3d at 995; see also Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). Thus, the Court finds that the balance of hardships and the public interest weigh in favor or granting petitioner injunctive relief.

### D. Remedy

This Court finds the requirements for issuing a preliminary injunction are met. "The purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" Lepe, 2025 WL 2716910 at *10 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Petitioner's immediate release is required to return him to the status quo before the pending controversy. Respondents are ordered to release petitioner immediately. If the government seeks to re-detain petitioner in the future, the government must prove that petitioner is a flight risk or danger to the community at a bond hearing before a neutral arbiter.

## V. BOND

The Court exercises its discretion under Federal Rule of Civil Procedure 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003); see Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011). Therefore, no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

## VI. CONCLUSION AND ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order, which is converted to a motion for preliminary injunction (ECF No. 2), is granted.
2. Petitioner Jhon Jader Bornachera Florez shall be released immediately from respondents' custody.

3. Respondents are enjoined and restrained from re-detaining petitioner unless they provide written notice and demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

5. Within seven days of this order, the parties are ordered to file a Joint Status Report as to petitioner's status, and whether a briefing schedule needs to be set to address the petition on the merits.

Dated: December 23, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/Flor1897.157/2