UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JHON JADER BORNACHERA FLOREZ,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, et al.,<br><br>Respondents. | No. 1:25-cv-1897 CSK<br><br><br><br>ORDER |

Petitioner, an asylum seeker from Colombia who entered the United States on or around December 7, 2024, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials. Department of Homeland Security ("DHS") officials paroled petitioner and released him on December 26, 2024 pursuant to Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226. On October 27, 2025, petitioner received notification from U.S. Immigration and Customs Enforcement ("ICE") instructing him to appear at the ICE Field Office in San Francisco for an in-person check-in visit. On October 30, 2025, when petitioner presented himself at the ICE Field Office as required, petitioner was re-detained without notice or a pre-deprivation hearing. This habeas action concerns petitioner's re-detention. On December 23, 2025, the Court granted petitioner's motion

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 8.)

1

for preliminary injunction and ordered petitioner released, and petitioner was released from ICE custody. (ECF Nos. 14, 17.) The parties filed a joint status report informing the Court that additional briefing was not needed to decide the petition on the merits. (ECF No. 15.)

I.    BACKGROUND

The factual and procedural background previously presented in the Court's December 23, 2025 order are incorporated herein. (See ECF No. 14.) This section focuses on providing updates since the December 23, 2025 order. After the Court's December 23, 2025 order, petitioner was released from ICE custody. (ECF No. 15.) On December 29, 2025, the parties filed a joint status report informing the Court that additional briefing was not needed to decide the petition on the merits and waiving a hearing. (ECF No. 15.)

II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). The petition raises a Fifth Amendment procedural due process clause claim. (ECF No. 1 at 11-12.)

///

///

A.    **Applicability of 8 U.S.C. § 1225(b)(1)**

Respondents argue that petitioner is subject to § 1225(b)(1) expedited removal and therefore, subject to mandatory detention. Even when accepting as accurate the government's description and analysis of § 1225(b)(1) expedited removal (see ECF No. 10 at 4:6-6:8), petitioner was not subject to § 1225(b)(1) because it is undisputed that petitioner was paroled into the United States. See 12/26/2024 Interim Notice Authorizing Parole (ECF No. 13-1 at 11-12); see also Resp't Opp'n (not disputing petitioner's immigration parole status). This is because § 1225(b)(1) does not apply to individuals paroled into the United States as the government itself acknowledges:

> Section 1225(b)(1) allows for the expedited removal of any noncitizen "described in" § 1225(b)(1)(A)(iii)(II), as designated by the Attorney General or Secretary of Homeland Security—that is, any noncitizen not "admitted or paroled into the United States" and "physically present" fewer than two years—who is inadmissible under § 1182(a)(7) at the time of "inspection."

(ECF No. 10 at 4; see also ECF No. 10 at 5 (quoting Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139-40 (Jan. 24, 2025)); 8 U.S.C. § 1225(b)(1)(A)(iii) (excluding aliens who have been admitted or paroled into the United States)). Petitioner was paroled into the United States by immigration officials on December 26, 2024, and remained on immigration parole when he was re-detained on October 30, 2025. (See ECF No. 13-1 at 11-12.) While petitioner may have been properly subject to § 1225(b)(1) expedited removal upon his arrival in the United States on December 7, 2024, see 8 U.S.C. § 1225(b)(1)(A)(i), respondents provide no legal authority for application of § 1225(b)(1) expedited removal to petitioner after he was paroled into the United States, including when he was re-detained on October 30, 2025. Therefore, the government's argument that § 1225(b)(1) expedited removal applies to petitioner fails.

In addition, when petitioner was paroled into the United States, he was expressly released pursuant to 8 U.S.C. § 1226 (Section 236 of the INA) and 8 C.F.R. part 236. 12/26/2024 DHS Form I-286 Notice of Custody Determination (ECF No. 13-1 at 1); 12/26/2024 Interim Notice

///

///

Authorizing Parole (ECF No. 13-1 at 11-12).[2]

### B. Due Process Claim

Petitioner argues that due process was denied because he was not provided with "the written notice required under 8 C.F.R. § 212.5(e)(2) that must accompany a revocation of parole" or a pre-deprivation bond hearing before petitioner was re-detained. (ECF No. 2 at 2; see id. at 8; ECF No. 1 at ¶¶ 32-41; ECF No. 11 at 4.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of

---

[2] In his reply, petitioner argues that § 1225(b)(2) does not apply because he was paroled into the country, and that respondents rely on the recent change in the government's interpretation of § 1226(a). (ECF No. 11 at 1-2, 3.) It is unclear why petitioner presents argument in his reply regarding § 1225(b)(2) and the government's recent changed interpretation of § 1226(a) where the government does not assert that petitioner is being detained pursuant to § 1225(b)(2) or present any argument regarding its new interpretation of § 1226(a). Compare Pet'r Reply (ECF No. 11), with Resp't Opp'n (ECF No. 10). Regardless of this argument in petitioner's reply, the underlying habeas petition and petitioner's motion refer to § 1225(b)(1) and make clear that petitioner claims that due process was denied because he was not provided with the required written notice to revoke immigration parole and petitioner was not provided with a pre-deprivation bond hearing before he was re-detained. (ECF No. 2 at 2; see id. at 8; ECF No. 1 at ¶¶ 32-41.) The Court turns to the due process claim.

1   preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context);

2   Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether

3   a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have

4   resolved the issue by comparing the specific conditional release in the case before them with the

5   liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d

6   864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

7       In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide

8   range of things open to persons" who have never been in custody or convicted of any crime,

9   including to live at home, work, and "be with family and friends and to form the other enduring

10  attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly

11  subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring,

12  his "condition is very different from that of confinement in a prison." Id. "The parolee has relied

13  on at least an implicit promise that parole will be revoked only if he fails to live up to the parole

14  conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."

15  Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued

16  liberty." Id. at 481-84.

17      Here, petitioner was initially detained upon his arrival, then paroled into the United States

18  on December 26, 2024 and released. As this district court recently explained, this Court agrees

19  that noncitizens paroled into the United States have a liberty interest in their continued release:

> Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). See e.g. Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (determining that the petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the petitioner released from custody subject to the conditions of her preexisting parole under § 1182(d)(5)(A), and requiring notice and a hearing prior to her re-detention); Noori, 2025 WL 2800149, at *9–10, 14 (enjoining re-detention of the petitioner during the pendency of his removal proceedings without leave of the court, when the petitioner was previously released on humanitarian parole pursuant

to § 1182(d)(5)(A)); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3, 2025) (ordering the petitioner's immediate release following re-detention when he was initially released pursuant to § 1182(d)(5)(A)). The court agrees with the conclusions reached in the cited cases and finds that petitioner is likely to demonstrate that he has a liberty interest in his continued release. The court proceeds to consider whether due process requires written notice and a pre-detention hearing before a neutral adjudicator.

Chavarria v. Chestnut, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); see also Castellon v. Kaiser, 2025 WL 2373425, at *5 (E.D. Cal. Aug. 14, 2025) (case-by-case analysis required as to the decision to revoke parole); Y-Z-H-L v Bostock, 2025 WL 1898025, at *10-12 (D. Or. July 9, 2025). This Court concludes that petitioner has a protected liberty interest in his release. See Chavarria, 2025 WL 3533606, at *3; Castellon, 2025 WL 2373425, at *5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Y-Z-H-L, 2025 WL 1898025, at *10-12; Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V. v. Wofford, 2025 WL 3083934, at *4-5 (E.D. Cal. Nov. 4, 2025).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at

the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over ten months, petitioner was free from custody before his re-detention. Between petitioner's release from detention on December 26, 2024 until his re-detention on October 30, 2025, petitioner attended church on most Sundays, lived with his sister, cleaned and cooked at their residence, and began taking English classes at an adult school. (ECF No. 2-2 at 3-4.) Petitioner complied with ICE's monitoring requirements and respondents do not contend that petitioner violated any release conditions. (See id. at 3-4; ECF No. 13 at 2 n.1.).[3] Petitioner also informed ICE of his new address. (ECF No. 2-2 at 4.) Petitioner has no criminal record, which respondents do not dispute. (ECF No. 1 at ¶ 12; see Resp't Opp'n.)

The second Mathews factor also weighs in petitioner's favor. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 10.) In addition, respondents do not contend that petitioner has a criminal record. (Id.)

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without notice and without a hearing is "low." See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F.

---

[3] Petitioner notes in his motion that he was late one time in submitting his selfie-picture through the ISAP application on July 15, 2025. (ECF No. 2 at 5.) This issue is not relevant as respondents do not contend that petitioner violated any conditions of his release. (See ECF No. 13 at 2 n.1.)

1   Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  Detention hearings in immigration courts are
2   routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  Even if respondents
3   believed they had a proper reason to detain petitioner, such decision on their part would warrant
4   written notice and a pre-detention hearing rather than automatic detention.  "That the Government
5   may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate
6   the detention in a manner that comports with due process."  E.A. T.-B. v. Wamsley, 795 F. Supp.
7   3d 1316, 1322 (W.D. Wash. 2025).  In addition, here, the government's interest is even lower
8   because petitioner was previously released after immigration officials determined he was not a
9   flight risk or danger to the community, he lived in the country for over ten months on release, he
10  has no criminal record, and he has complied with all conditions of release, including reporting to
11  ICE as required.  See Pinchi, 2025 WL 1853763, at *2.

12         Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor
13  of finding petitioner is entitled to notice and a bond hearing, and petitioner should have been
14  provided such notice and a hearing before he was re-detained.  "An essential principle of due
15  process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for
16  hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S.
17  532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal
18  cases, parolees released on parole, which does not provide "absolute liberty," but rather
19  "conditional liberty properly dependent on observance of special parole restrictions," are also
20  entitled to due process, including a predeprivation hearing before their parole can be revoked.
21  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend
22  to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).
23  Respondents identify no reason why written notice was not provided as required by their own
24  regulations or why and a pre-deprivation hearing could not be held, and provided no evidence of
25  "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo
26  M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is entitled
27  to relief on his due process claim.
28  ///

## IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.
2. Respondents are enjoined and restrained from re-detaining petitioner Jhon Jader Bornachera Florez unless they provide written notice and demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
3. The Clerk of the Court is directed to enter judgment in favor of petitioner and close this case.

Dated:  March 3, 2026

*/s/ Chi Soo Kim*
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/flor1897.25.order.merits/1